Good morning, ladies and gentlemen. Our first case for this morning is Vidinski v. Attorney General Barr. Ms. Glazer. Good morning, Your Honors. Nicolette Glazer, appearing on behalf of Petitioner Mr. Vidinski. I would like to reserve three minutes of my time for rebuttal. All right. Just keep an eye on it. May it please the Court. Your Honor, the briefing in this matter was completed effectively two days before this Court's decision in Ortiz. Santiago. And as such, the case disposed of most of the arguments and legal position presented by the Court in finding that non-compliance with Section 1229A.1.g.i is not jurisdictional but a claim processing rule. In the same vein, the Court also rejected the government's position that Bermudez caught us. The only reason on which this petition and motion was denied is entitled to deference. However, it left the issue of forfeiture and the issue of whether Mr. Vidinski and a small group of people that fall in the same category may be entitled to a reprieve based on this Court finding at page 15 on Ortiz-Santiago that Pereira actually amounts to a genuine change in circumstances. In this case, the difference from the petitioner in Ortiz-Santiago, Mr. Vidinski from the first moment contested the initiation of removal proceedings and the NTA. It did not specifically challenge the fact that it was a putative notice to appear. However, we would like to bring the Court's attention that at the time this NTA was filed, Debabneh, this Court's presidential decision, was in the books for more than four years. At the time, no other circuit court, and at the time there was Haider, there was also the Fifth Circuit, and Popper out of the Ninth Circuit that have completely debunked the idea that there was some relevance to the definition of a notice to appear containing the regulation. Further, by the time both the IJ and the BIA resolved the issue, there had been no even inkling that there was a possibility that that argument was not proper. Mother of Camarillo had been already decided. And so it would be unreasonable to expect that a respondent in a removal proceeding with such a clear law of the circuit precedent in the book would be required to ensure the right of an immigration judge by trying to beat a dead horse by claiming, well, there is still a problem. But, you know, all of that may be true, and I understand what you're saying, until the Pereira case there wasn't the kind of focus on this. But it doesn't transform this into a jurisdictional problem, does it? No, it is not. It is, as the Court finds, it is a mandatory claim processing rule. And my point here is that Mr. Vidinsky did challenge, did properly invoke, and contested the initiation of removal proceeding by challenging both the NTA in its entirety, both the charges and the factual allegations, and even refused to testify when the IJ asked him to testify. So that's the, I'm glad you're saying what you're saying, because you make that point on page 24 of your brief, and I wasn't sure what you meant by it, and I think I understand what you're saying. What you're saying is that he joined issue with the merits of, you know, the removal, the removal, the basis for the removal. Correct. But you're not arguing that any, your argument doesn't cover any aspect of the time or date or any of that with respect to the NTA. Correct. They did not specifically raise an objection that the NTA did not include the date and time. They challenged the NTA as a whole, containing these, I believe they challenged service, they challenged the factual allegation, and they challenged the issue of removability as contained. So they placed the initiation of removal proceeding and put the government to their burden from the first moment they arrived. So you're saying that's an adequate objection to have preserved the argument you're making now? Correct, Your Honor. We will respectfully say that that was a proper invocation to preserve the issue, because this is not a waiver, because there was no known right. It is clearly a forfeiture, which is distinct. Here, I think the court should find that for people like Mr. Wiedenski, who challenged removal proceeding between 2006, when Dababneh came on the books, and the first inkling that there was a problem and there was a split in the decision, those people who actually challenged removal proceeding may have preserved enough their forfeiture so that the BIA may consider exceptional circumstances. But where is the prejudice to somebody like Mr. Wiedenski? He did eventually find out when and where the hearing was going to take place, and he participated. Well, Your Honor, the prejudice here is when the court will consider the whole history of this case. And the prejudice, I think, is relevant here because, as the court is aware from the previous, the merits decision, the BIA specifically found that his counsel was inefficient in addressing the issue of cancellation of removal. What the BIA and this court affirmed after the decision was that there was not prejudice because of the removability. However, what's relevant here is that in this motion, Mr. Wiedenski asked for an opportunity to reapply for cancellation of removal based on his attachment to his second child, who was born after the motion to reopen was even denied. So I believe the prejudice here comes from the Akkadi Doctrine that had brought the issue of regulatory violation in the context of deportation as implicating due process. And here, the due process and the prejudice is that people like Mr. Wiedenski will never have an opportunity to have a review of their claim that they are entitled to a new or reapplication for a relief based on acquired relative. Because again, here the issue is hardship. There is no question he had the 10 years. He's a person of good moral character, no convictions, no bars. He did have the children. The question is here whether hardship to his younger son, George, is sufficient to prevent a deportation and a relief. The BIA did not address that. The IJ did not. And this court never could address hardship because that is specifically removed from this court's jurisdiction under the zipper clause. So it raises a question that people in these circumstances who try to put the government to their burden, they have an opportunity now to have the BIA reassess. Now, we would ask the court to remand under Ventura to the BIA for the first time to determine how a claim processing rule should apply for people like Mr. Wiedenski in that very specific circumstances. To my knowledge, no BIA have ever addressed the issue of claim processing and how such rule and the Supreme Court treatment of a mandatory processing rule apply immigration proceedings. So I think from that stand, it will be beneficial for the BIA to first address that. We placed it in front of them. We brought tolling. We brought prejudice. And we brought waiver and forfeiture to them. They did not address it because they found that Bermuda Codders was dispositive. So I will reserve my rest. Thank you, Your Honor. All right. Thank you very much. Ms. Park. May it please the court, Song Park for the Attorney General. Mr. Wiedenski, as he just presently acknowledged, raises one primary challenge before this court, which is whether the immigration court's jurisdiction properly vested with the notice to appear that was served to him that was missing the time and date information. The government submits, as Mr. Wiedenski also just acknowledged, that Ortiz-Santiago, this court's decision squarely governs and disposes of this petition for review on that point. With respect to Mr. Wiedenski's claim that he properly raised or notified the agency of his complaint with respect to the missing date and time information and the defect of the notice to appear, nothing in the record supports that. As Mr. Wiedenski, the petitioner, just acknowledged as well, at no point during the course of the proceedings before the immigration judge or before the Board of Immigration Appeals did he ever contest that the absence of the date and time information in his notice to appear rendered that particular document to be defective for any purpose. So I understand him to be arguing, though, that an objection at the time, before Pariro was decided, would have been futile under the well-established law of virtually all the circuits. That's correct, Your Honor, but as this court recognized in Ortiz-Santiago, anyone could have stood in the place, in the shoes of Mr. Pereira. In other words, Ortiz-Santiago, I think, specifically recognizes that Pereira's challenge rested on a plain reading of the relevant statutory provision, and the court explained that any petitioner who, even pre-Pereira, at the issuance of the decision in Pereira, could have raised the same issue, could have made the same complaint, and indicated that the same defect existed in that notice to appear. Go ahead. You can finish. With respect to the complaint that was made before the agency, what Mr. Bedinsky complained to was he was charged, brought, three different grounds of removal were brought before him. One of them he conceded to. He indicated, yes, he was subject to removal under that ground. The other remaining two he did contest, which is why, throughout the course of the proceedings before the immigration judge, the government met its burden by putting forth the requisite evidence and testimony to be able to establish that ground of removal. And, in fact, in its prior petition for review in this case, Your Honor, this court affirmed that decision of the agency. With respect to, I think, what Mr. Bedinsky is trying to shoehorn together is the mere fact that he challenged his removal ground or that he challenged the fact that the immigration judge may have erred by denying the form of relief he was seeking. That should be, in and of itself, enough to raise this claim against the defective nature, the alleged defective nature. Ms. Park, can you address prejudice? Yes, Your Honor. In any event, even if all of this were to be assumed in Mr. Bedinsky's favor, he's unable to show any prejudice. The fact of the matter is that he appeared before every scheduled hearing as the agency scheduled it. He applied for every form of relief for which he believed himself to be available. He was represented by his chosen counsel throughout each of these proceedings, and there's no indication that there's any sort of manner in which he was precluded from presenting his case in the manner that he wished to have presented it. He never missed any type of hearing. There's never been an allegation that a notice of hearing that was sent to him was not received. There's never been an allegation, aside from the actual merits question, as to whether he should have been granted the particular applications he sought. Let me ask you about this hardship waiver. Ms. Glaser just said that he meets all the criteria, including good moral character, and I'm wondering what the government's position on that is, given the fraudulent marriage allegation that's in this record. Correct, Your Honor. With respect to that, in the previous petition for review that the court has already resolved, it upheld that finding by the board and the immigration judge. And, in fact, when the original cancellation of a removal application had been submitted during his initial proceedings before the immigration judge, he denied it among many reasons, one of them being that Mr. Vadinsky had not met the requisite hardship level that the statute requires, but that in addition to that, even if he had, I believe the immigration judge found that he would have denied it in the exercise of discretion in light of the finding of marriage fraud. So in that way, Your Honor, Mr. Vadinsky simply does not qualify for the relief of cancellation of removal, and to the extent he may be alleging that he has additional new facts that arose subsequent to those proceedings that he presented newly to the board, the government would point out, as the board did in its decision, that Mr. Vadinsky, to the extent he was seeking an untimely motion to reopen, did not proffer any evidence in support of his claim that he should be eligible for cancellation of removal. He did submit with his motion a completed application, and I believe the birth certificates for both of his children, and an affidavit that was dated 2011, which seemed to have been submitted, the same affidavit that had been previously submitted in conjunction with his prior cancellation application. So based on those pieces of evidence that he submitted with his motion to reopen the board, simply declined to do so for that reason because there was not, his prima facie eligibility for the relief he sought had not been met. And this was an appeal to its sua sponte authority, I take it? Yes, because this was both an untimely and supernumerary motion. Supernumerary motion, right, okay. Unless there are any other questions. The government would ask that the court deny the petition for review. Thank you. All right, thank you very much. Anything further, Ms. Glazer? Just if I address the issue of prejudice, and the argument that opposing counsel brought with respect to the prejudice, I think the main prejudice is it's true. He didn't miss hearings. However, his counsel and Mr. Vadinsky believe that he has the right to remain silent and put the government to his burden. This court in the Vadinsky, the merit petition found that that is not the case. So, I mean, and specifically the court found there that the fact did not fit nicely with the idea of marriage fraud in a footnote to that decision, but the court's posit on the fact that he didn't testify, he didn't present a defense. Now, if Mr. Vadinsky is allowed to respond, then he will be able to testify. He will be able to testify and present issues as to his story. He had provided his affidavit. The judge decided he's not going to credit that affidavit, but saying what happened. He was a truck driver who was on the road all the time, and his wife was not happy, so things happened. Whether the court will credit that is a different question, but that was a genuine belief by his counsel, apparently, that he had the right to remain silent because the government had the burden. And I think it is an issue that could be addressed and could provide him an opportunity to actually mount a defense.  Thank you, Your Honor. Thank you very much. Thanks to both counsel. We'll take the case under advisement.